# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN GONZALES,<br><br>                 Plaintiff,<br>vs.<br>UNUM LIFE INSURANCE COMPANY, et al.,<br><br>                 Defendant. | CASE NO. 09cv468 BTM (JMA)<br><br>**ORDER DENYING MOTION TO DISMISS AND STRIKE** |

Defendants Unum Life Insurance Company of America ("Unum") and Provident Life and Accident Insurance Company ("Provident") move the Court to dismiss the second cause of action in Plaintiff Ruben Gonzales's Complaint. Defendants also move to strike Plaintiff's demand for a jury trial. For the reasons discussed below, Defendants' Motion to Dismiss and Strike is **DENIED.**

## I. BACKGROUND

Starwood Hotels and Resorts ("Starwood") formerly employed Plaintiff as a sales team manager. (Compl. ¶ 9.) Plaintiff suffered a disability on June 8, 2007, at which time his Starwood employment ceased.

During his employment with Starwood, Plaintiff elected to participate in the Voluntary Workplace Disability Plan (the "VW Plan"), a short-term disability plan. The VW Plan provided voluntary workplace disability benefits through an insurance policy issued by

1 | Defendant Provident. (Compl. ¶ 10.) The terms of the VW Plan provided benefits in the
2 | amount of $5,000.00 per month for a maximum benefit period of six months. (Compl. ¶ 11.)
3 | While a Starwood employee, Plaintiff also elected to participate in a long-term
4 | disability plan (the "LTD Plan") sponsored by Starwood. (Compl. ¶ 12.) Defendant Unum
5 | issued disability benefits under the LTD Plan to participating Starwood employees through
6 | a group insurance policy. (Compl. ¶ 12.) The LTD Plan provided benefits for Plaintiff in the
7 | amount of 60% of his monthly earnings for a period of 18 months following his disability.
8 | (Compl. ¶ 13.)
9 | Plaintiff allegedly suffered a loss under both the VW and LTD Plans when he became
10 | totally disabled on June 8, 2007, following an operation for coronary stenting to address his
11 | coronary artery disease. (Compl. ¶¶ 17, 21.) On June 19, 2007, Plaintiff filed for benefits
12 | with Provident under the VW Plan. (Compl. ¶ 18.) On August 6, 2007, Provident granted
13 | Plaintiff's application for benefits. (Id.)
14 | On June 20, 2007 Plaintiff applied for benefits with Unum under the LTD Plan.
15 | (Compl. ¶ 18.)
16 | On July 11, 2007, Plaintiff's physician diagnosed him with Parkinson's disease and
17 | referred him to a neurologist. (Compl. ¶ 21.) On July 12, 2007, the neurologist confirmed this
18 | diagnosis. (Id.) Both doctors submitted attending physician reports to Provident and Unum.
19 | (Id.)
20 | On December 19, 2007, Provident stopped paying benefits to Plaintiff under the VW
21 | Plan. (Compl. ¶ 18.) On February 11, 2008, Provident informed Plaintiff by letter that it
22 | would not pay any further benefits. (Compl. ¶ 19.)
23 | On January 15, 2008, Unum denied long-term disability benefits to Plaintiff under the
24 | LTD Plan. (Compl. ¶ 19.)
25 | On May 6, 2008, Plaintiff appealed the denial of benefits under both Plans. (Compl.
26 | ¶ 20.) On October 30, 2008, Provident and Unum denied Plaintiff's appeals. (Id.)
27 | On November 14, 2008, Plaintiff submitted a neuropsychological evaluation to
28 | Defendants to appeal the denial of benefits under both Plans for a second time. (Id.) Plaintiff

allegedly never received a decision on these appeals. (Id.)

On March 9, 2009, Plaintiff filed a Complaint with the Court. Plaintiff brings two causes of action against Defendants: (1) a claim pursuant to the Employee Retirement Security Act, 29 U.S.C. § 1001, *et seq.* for benefits denied under the LTD Plan and the VW Plan;[1] and (2) a claim for breach of the implied covenant of good faith and fair dealing arising out of the denial of benefits under the VW Plan.

## II. **STANDARD**

Under Fed. R. Civ. P. 8(a)(2), the plaintiff is required only to set forth a "short and plain statement" of the claim showing that plaintiff is entitled to relief and giving the defendant fair notice of what the claim is and the grounds upon which it rests. Conley v. Gibson, 355 U.S. 41, 47 (1957). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in the plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.

---

[1] In the text of Plaintiff's Complaint, he entitles his first cause of action simply a "claim for benefits," and does not specify that the claim is made pursuant to ERISA. However, the caption to Plaintiff's Complaint indicates that he brings a "complaint for relief under ERISA" and "bad faith breach of the insurance contract (i.e. tortious breach of the implied covenant of good faith and fair dealing)." Moreover, Plaintiff describes the "Nature of the Action" in his Complaint as "an action under the Employee Retirement Security Act . . . ." Thus, the Court assumes Plaintiff brings his first cause of action for the denial of benefits under ERISA.

## III. **DISCUSSION**

First, Defendants argue that ERISA preempts Plaintiff's state law claim for breach of the implied covenant of good faith and fair dealing for failure to pay benefits under the VW Plan. Defendants initially contend that the VW Plan qualifies as an employee welfare benefit plan on its own. Alternatively, Defendants argue that the VW Plan is part of a multi-benefit employee welfare benefit plan.

Second, Defendants move to strike Plaintiff's demand for a jury trial.

A. <u>Existence of an Employee Welfare Benefit Plan</u>

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." <u>Aetna Health Inc. V. Davila</u>, 542 U.S. 200, 208 (2004). The Act defines an employee welfare benefit plan as:

> any plan, fund or program . . . established or maintained by an employer or employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the events of sickness, accident, disability, death, or unemployment . . . . 29 U.S.C. § 1002(1).

ERISA's regulatory regime contains a "comprehensive civil enforcement scheme," set forth at 29 U.S.C. § 1132(a), which is exclusive of state law remedies. See <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 54–56 (1987). "Any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." <u>Aetna</u>, 542 U.S. at 209 (citations omitted). Thus, if the VW Plan qualifies as an employee welfare benefit plan, ERISA will preempt Plaintiff's breach of the implied covenant of good faith and fair dealing claim based on the denial of benefits under that Plan.

"The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding circumstances from the point of view of a reasonable person." <u>Stuart v. UNUM Life Ins. Co. of America</u>, 217 F.3d 1145, 1149 (9th Cir. 2000) (quoting <u>Zavora v. Paul Revere Life Ins. Co.</u>, 145 F.3d 1118, 1120 (9th Cir. 1998)). The VW Plan may qualify as an

employee welfare benefit plan in one of two ways. First, the VW Plan alone may constitute an employee welfare benefit plan as defined in Section 1002(1). Second, the VW Plan may exist as a component of a larger, ERISA-regulated, multi-benefit program. The Court addresses separately the two potential avenues for ERISA coverage.

1. <u>Is the VW Plan an employee welfare benefit plan on its own?</u>

Defendants first argue that the VW Plan, alone, constitutes an employee welfare benefit plan as defined in Section 1002(1) because it was (1) established by Starwood, (2) for the purpose of providing its beneficiaries, Starwood employees, (3) with benefits in the event of disability. Plaintiff contends, however, that the VW Plan falls within the ERISA "safe harbor" regulation. The safe harbor regulation excludes certain group or group-type insurance programs for purposes of the Act, even if the programs otherwise meet the Section 1002(1) definition:

> [T]he terms 'employee welfare benefit plan' and 'welfare plan' shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which:
> (1) No contributions are made by an employer or employee organization;
> (2) Participation in the program is completely voluntary for employees or members;
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs. 29 C.F.R. § 2510.3-1(j).

"An employer's failure to satisfy just one requirement of the safe harbor regulation conclusively demonstrates that an otherwise qualified group insurance plan is an employee welfare benefit plan under ERISA," <u>Stuart</u>, 217 F.3d at 1151–52. Plaintiff argues, however, that the VW Plan meets all four conditions of the safe harbor regulation. Plaintiff contends that (1) Starwood did not make contributions to the Plan; (2) the Plan was completely voluntary to Starwood employees; (3) Starwood's sole involvement in the Plan was to

advertise it, collect premiums from employees, and transmit the premiums to Provident; and (4) Starwood received no compensation in connection with the Plan.

Defendants do not dispute that the VW Plan meets each of the requirements for exclusion from the "employee welfare benefit plan" as outlined in Section 2510.3-1(j). Defendants only reiterate that the VW Plan meets the definition of an employee welfare benefit plan set forth in Section 1002(1). Defendants cite no legal authority requiring Plaintiff to plead "safe harbor" in his Complaint. Rather, it is Defendants' burden to establish the existence of an ERISA plan. See Kanne v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 492 n. 4 (9th Cir. 1988); see also Zavora, 145 F.3d at 1120 n. 2. Taking Plaintiff's factual allegations as true and construing them in the light most favorable to him, the Court finds that Defendants have not shown that the VW Plan constituted an employee welfare benefit plan on its own.

2. Is the VW Plan a component of an ERISA multi-benefit program?

Alternatively, Defendants contend that the VW Plan was part of a larger ERISA-regulated multi-benefit plan maintained by Starwood. Plaintiff and Defendants agree that the LTD Plan is an ERISA-regulated employee welfare benefit plan. Because ERISA covers the LTD Plan, the VW Plan will also fall within ERISA coverage if the plans were administered together as part of the same multi-benefit program. See Fisher v. Prudential Ins. Co. of America, 842 F. Supp. 397, 401 (N.D. Cal. 1993) (where one plan was conclusively covered by ERISA, all other plans in an employer-administered multi-benefit program were also subject to ERISA regulation).

Defendants rely on several cases to support their argument. First, Defendants point to the principal Supreme Court case addressing ERISA coverage of multi-benefit programs, Shaw v. Delta Airlines, Inc., 463 U.S. 85, 107 (1983). Shaw involved a disability plan maintained by an employer solely to comply with New York's Disability Benefits Law. See generally, id. Although ERISA exempts "any employee benefit plan . . . maintained solely for the purpose of complying with applicable . . . disability insurance laws," 29 U.S.C. §

1003(b)(3), the Court nonetheless held that ERISA covered the disability plan at issue because it was part of a larger, ERISA-regulated, multi-benefit plan. Id. at 107. The Court specifically found that ERISA exempted only *separately administered* disability plans maintained solely to comply with state disability benefits laws. Id. at 108.

Second, Defendants rely on Peterson v. American Life and Health Insurance Co., 48 F.3d 404 (9th Cir. 1995), in which the Ninth Circuit addressed an insurance policy issued only to a non-employee partner. ERISA regulations exclude from the definition of an employee welfare benefit plan those policies "under which no employees are participants." 29 C.F.R. § 2510.3-3(b). Nevertheless, the Ninth Circuit found that ERISA covered the policy at issue because it was merely one component of the employer's multi-benefit employee program which, taken as a whole, constituted an ERISA plan. Peterson, 28 F.3d at 407–408. The Court of Appeals found important that the employer "not only paid its partners' and employees' premiums but also played an active role in the *administration* of the coverage, including choosing the insurance, adding and deleting employees and partners from various policies, contacting insurance companies for employees and partners, and distributing information relevant to the coverage." Id. at 408.

Finally, Defendants cite Alloco v. Metropolitan Life. Ins. Co., 256 F. Supp. 2d 1023 (D. Ariz. 2003). In Alloco, the plaintiff's employer offered a group insurance benefit plan that included life insurance and business travel insurance at the expense of the employer and long-term disability insurance at the expense of the employee. Id. at 1026. As here, the plaintiff argued that the long-term disability plan fell within the safe harbor regulation and was exempt from ERISA. Id. at 1027. Looking at the employer's benefit program as a whole, the district court rejected the plaintiff's argument. Id. at 1028. The district court found it significant that ERISA clearly covered the overall benefit program, of which the long-term disability plan was merely one component. Id. The court also went on to hold, however, that the long-term disability plan could not meet the third and fourth prongs of the safe harbor regulation because the employer "participated in the *administration* of the [long-term disability] benefits to a material extent." Id. The court specifically noted that the employer

designated employees eligible to participate in the plan, filed forms with Department of Labor as required by ERISA, acted as the "plan sponsor," and created a summary plan description referencing ERISA.

The Court disagrees with Defendants that this case is necessarily analogous to Shaw, Peterson, or Alloco. Unlike those cases, there is no evidence before the Court now to suggest that Starwood administered the VW and LTD Plans together as one ERISA multi-benefit program. Drawing from the Supreme Court's reasoning in Shaw, other courts considering whether an ERISA multi-benefit plan exists, as in Peterson and Alloco, have focused closely on whether the program is administered as one single unit.

For example, in Mortier v. Mass. Gen. Life Ins. Co., 805 F. Supp. 816 (C. D. Cal. 1992) the district court considered whether a cancer insurance policy was part of the employer's general, ERISA-regulated plan. Noting that Shaw "was clearly concerned with plans that are administered as a single unit," the district court found that the cancer plan was not a part of the general ERISA plan because it was offered by an entirely different insurer and administered separately. Id. at 819.

In Fisher, the district court similarly focused on whether the alleged multi-benefit plan was administered as a single unit. The policy at issue in Fisher was one of three plans offered by the American Institute of Certified Public Accountants. Id. at 398. Although only one plan definitively constituted an employee welfare benefit plan under ERISA, the district court held that the Act covered all three plans because together they "demonstrate[d] characteristics of a plan administered as a single unit under Shaw." Id. at 401. Specifically, the court noted that all plans in the program were backed by a single trust, had a single trustee and a single insurer, and were overseen by the same administrative and clerical staff. Id. The court further relied on the fact that the trust filed only one Internal Revenue Service-Department of Labor Form 5500 ("Form 5500") covering all three plans together. Id.

Defendants have not shown that Starwood administered the VW Plan and the LTD Plan "as a single unit." Plaintiff contends, and Defendants do not directly dispute, that Starwood did not administer the VW Plan at all, unlike the employers in Peterson and Alloco.

1    Rather, Plaintiff argues that Starwood had no involvement with the VW Plan other than to
2    collect premiums. As in <u>Mortier</u>, different insurers issued the VW Plan (Provident) and the
3    LTD Plan (Unum). Furthermore, Plaintiff alleges that while Starwood filed a Form 5500 for
4    the LTD Plan, the VW Plan was not included. Contrary to <u>Alloco</u>, no evidence here suggests
5    that Starwood determined employees' eligibility for the program, acted as the plan sponsor,
6    or created a summary plan description covering the VW Plan.

7          Contrary to Defendants' assertions, the paragraph in Plaintiff's complaint stating,
8    "[d]uring the course of his employment with Starwood Hotels and Resorts Plaintiff elected to
9    participate in the VW Plan," does not, alone, establish that Starwood administered a multi-
10   benefit program entirely covered by ERISA. Plaintiff may have "elected" to participate in the
11   VW Plan as a group-insurance type program within the ERISA safe harbor regulation.
12   Without more, this statement by Plaintiff does not demonstrate that the VW Plan was merely
13   one component of an ERISA multi-benefit program administered as a single unit.

14         Because Defendants have not shown that the VW Plan was an employee welfare
15   benefit plan under ERISA, they have also not proven that ERISA preempts Plaintiffs' state
16   law claim based on the denial of benefits under that Plan. Therefore, the Court finds
17   Plaintiff's breach of the implied covenant of good faith and fair dealing claim cognizable at
18   this time. The Court recognizes, however, that discovery may reveal additional facts related
19   to the administration of the VW Plan and the applicability of the safe harbor regulation. Thus,
20   the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's breach of the implied covenant
21   of good faith and fair dealing claim as preempted by ERISA without prejudice to Defendants
22   raising the issue again on a motion for summary judgment.

23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

B.  <u>Jury Demand</u>

Defendants also move to strike Plaintiff's request for a jury trial. Upon motion by a party, "[t]he court may strike from a pleading an insufficient defense or redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Court views the pleadings in the light more favorable to the pleader on a motion to strike. <u>See</u> <u>State of Cal. ex rel. State Lands Comm. v. United States</u>, 512 F. Supp. 36, 39 (C.D. Cal. 1981).

"The remedies available to a participant or beneficiary under ERISA are equitable in nature and the Seventh Amendment does not require that a jury trial be afforded for claims made by participants or beneficiaries." <u>Thomas v. Or. Fruit Products Co.</u>, 228 F.3d 991, 997 (2000). Thus, a jury trial is not available for Plaintiff's ERISA claim for benefits under the LTD Plan. However, Plaintiff is entitled to a jury trial on its claims against Provident for breach of the insurance contract and breach of the implied covenant of good faith and fair dealing. Therefore, the Court **DENIES** Defendants' Motion to Strike.

## III.  CONCLUSION

For the reasons explained above, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's second cause of action. The Court **DENIES** Defendants' Motion to Strike.

**IT IS SO ORDERED.**

DATED: October 2, 2009

Honorable Barry Ted Moskowitz
United States District Judge