# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN GONZALES,<br><br>　　　　　Plaintiff,<br>　v.<br>UNUM LIFE INSURANCE COMPANY<br>OF AMERICA, et al.,<br><br>　　　　　Defendants. | Case No. 09cv468 BTM (WVG)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

　　　Defendants Unum Life Insurance Company and Provident Life and Accident Insurance Company have filed a motion for partial summary judgment on Plaintiff's state-law claims [Doc. 32]. For the following reasons, the Court **GRANTS** the motion.

## I. BACKGROUND

　　　Starwood Hotels and Resorts ("Starwood") formerly employed Plaintiff as a sales team manager. (Compl. ¶ 9.) Plaintiff suffered a disability on June 8, 2007, at which time his Starwood employment ceased.

　　　During his employment with Starwood, Plaintiff elected to participate in the Voluntary Workplace Disability Plan (the "VW Plan"), a short-term disability plan. The VW Plan provided voluntary workplace disability benefits through an insurance policy issued by Defendant Provident. (Compl. ¶ 10.) The terms of the VW Plan provided benefits in the amount of $5,000.00 per month for a maximum benefit period of six months. (Compl. ¶ 11.)

While a Starwood employee, Plaintiff also elected to participate in a long-term disability plan (the "LTD Plan") sponsored by Starwood. (Compl. ¶ 12.) Defendant Unum issued disability benefits under the LTD Plan to participating Starwood employees through a group insurance policy. (Compl. ¶ 12.) The LTD Plan provided benefits for Plaintiff in the amount of 60% of his monthly earnings for a period of 18 months following his disability. (Compl. ¶ 13.)

Plaintiff allegedly suffered a loss under both the VW and LTD Plans when he became totally disabled on June 8, 2007, following an operation for coronary stenting to address his coronary artery disease. (Compl. ¶¶ 17, 21.) Plaintiff filed for benefits with Provident under the VW Plan. (Compl. ¶ 18.) On August 6, 2007, Provident granted Plaintiff's application for benefits. (*Id.*) But in December of that same year, Provident stopped paying benefits under the VW Plan. (*Id.*) Plaintiff had also applied for benefits under the LTD Plan, but his application was denied. (Compl. ¶ 19.) He appealed the denial of benefits under both plans unsuccessfully. (Compl. ¶ 20.) And he never received a decision on a second, later appeal. (*Id.*)

Plaintiff brings two causes of action against Defendants: (1) a claim pursuant to the Employee Retirement Security Act, 29 U.S.C. § 1001, *et seq.* for benefits denied under the LTD Plan and the VW Plan;[1] and (2) a claim for breach of the implied covenant of good faith and fair dealing arising out of the denial of benefits under the VW Plan. Defendants move for summary judgment on the second claim.

## II. STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Pro-

---

[1] In the text of Plaintiff's Complaint, he entitles his first cause of action simply a "claim for benefits," and does not specify that the claim is made pursuant to ERISA. But the caption to Plaintiff's Complaint indicates that he brings a "complaint for relief under ERISA" and "bad faith breach of the insurance contract (i.e. tortious breach of the implied covenant of good faith and fair dealing)." Moreover, Plaintiff describes the "Nature of the Action" in his Complaint as "an action under the Employee Retirement Security Act . . . ." Thus, the Court assumes Plaintiff brings his first cause of action for the denial of benefits under ERISA.

cedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 314. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  DISCUSSION

Defendants argue that ERISA preempts Plaintiff's state-law claim for breach of the implied covenant of good faith and fair dealing based on their failure to pay benefits under the VW Plan. Defendants initially contend that the VW Plan qualifies as an employee welfare benefit plan on its own. Alternatively, Defendants argue that even if the VW Plan

is not an ERISA plan, it is part of a multi-benefit ERISA plan.

**1.      Existence of an Employee Welfare Benefit Plan**

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. V. Davila*, 542 U.S. 200, 208 (2004).  The Act defines an employee welfare benefit plan as:

> any plan, fund or program . . . established or maintained by an employer or employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the events of sickness, accident, disability, death, or unemployment . . . . 29 U.S.C. § 1002(1).

ERISA's regulatory regime contains a "comprehensive civil enforcement scheme," set forth at 29 U.S.C. § 1132(a), which is exclusive of state law remedies. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54–56 (1987). "Any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Aetna*, 542 U.S. at 209 (citations omitted). Thus, if the VW Plan qualifies as an employee welfare benefit plan, ERISA will preempt Plaintiff's breach of the implied covenant of good faith and fair dealing claim based on the denial of benefits under that Plan.

The VW Plan may qualify as an employee welfare benefit plan in one of two ways. First, the VW Plan alone may constitute an employee welfare benefit plan as defined in Section 1002(1). Second, even if the VW Plan is not itself an ERISA plan, the VW Plan may exist as a component of a larger, ERISA-regulated, multi-benefit program. The Court addresses separately the two potential avenues for ERISA coverage.

   A.   <u>Is the VW Plan an employee welfare benefit plan on its own?</u>

Defendants first argue that the VW Plan, alone, constitutes an ERISA employee welfare benefit plan as defined in Section 1002(1). Plaintiff disagrees, arguing that the VW Plan, by itself, does not qualify as an ERISA plan. It is Defendants' burden to establish the

existence of an ERISA plan.  *See Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 n. 4 (9th Cir. 1988).

An ERISA plan is (1) a plan, fund or program (2) established or maintained (3) by an employer or by an employee organization, or by both (4) for the purpose of providing insurance benefits (5) to the participants or their beneficiaries.  *See Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 916 (9th Cir. 1997); 29 U.S.C. § 1002(1).  An employer can establish an ERISA plan "rather easily."  Establishing one requires nothing "more than arrang[ing] for a 'group-type insurance program.'"  *Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987).  And that is exactly what Starwood did here.

Starwood chose Providence's short-term disability insurance coverage and made the plan available to its employees for supplemental coverage.  Essentially, it arranged for a group-type insurance program, which, according to the Ninth Circuit, is enough to establish a plan.  *Kennesaw Life*, 809 F.2d at 625.  Nothing more is required.

It is unclear exactly why Plaintiff believes that the VW Plan is not an ERISA plan. Plaintiff does not challenge any of the five elements listed above.  Instead, he argues that ERISA plans must be in writing.  But the "existence of a written instrument is not a prerequisite to ERISA coverage."  *Palmer v. Bainbridge Disposal, Inc.*, No. 08cv5067, 2009 WL 267199, at *4 (W.D. Wash. Feb. 9, 2009) (citing *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir. 1985) *abrogated on other grounds by Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1 (1987)); *see also Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982) ("There is no requirement of a formal, written plan . . . .").  He also argues that Defendants failed to file a form 5500, which is an ERISA-related administrative form, but does not cite any case law showing why failure to do so would negate the existence of an ERISA plan. In short, none of Plaintiff's arguments are convincing.

Still, the VW Plan may be excluded from ERISA under the so-called "safe harbor" regulations.  If a plan meets all four elements of the safe harbor, then ERISA does not govern it, even if the program otherwise meets the Section 1002(1) definition.  The safe

09cv468 BTM (WVG)

harbor regulation provides that

> the terms 'employee welfare benefit plan' and 'welfare plan' shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which:
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation in the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).

"[A]n employer's failure to satisfy just one requirement of the safe harbor regulation conclusively demonstrates that an otherwise qualified group insurance plan is an employee welfare benefit plan under ERISA," *Stuart v. UNUM Life Ins. Co of Amer.*, 217 F.3d 1145, 1150 (9th Cir. 2000). The parties agree that the VW Plan satisfies each element of the safe harbor except one: the third element.

That element prohibits the employer from endorsing the program, and the employer's sole functions can only be "to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer." 29 C.F.R. § 2510.3-1(j)(3). "A finding of endorsement is appropriate if, upon examining all the relevant circumstances, there is some factual showing on the record of substantial employer involvement in the creation or administration of the plan." *Thompson v. American Home Assur. Co.*, 95 F.3d 429, 436 (6th Cir. 1996). If an employer is "more than a mere advertiser of group insurance," the plan is outside of the safe harbor provision. *Kanne*, 867 F.2d at 493.

Starwood did a number of things that gave it a role in the creation and administration of the VW Plan that went beyond the "sole functions" of collecting premiums and letting Provident advertise. The first is that Starwood worked closely with UnumProvident (the parent company of Defendants Unum and Provident) in creating and implementing the VW Plan.[2] (Rogers Decl. ¶ 8.) The Vice President of Global Benefits at Starwood worked with a National Account Manager at UnumProvident to develop a comprehensive benefits package for Starwood employees. *Id.* Starwood and UnumProvident held meetings to discuss the integration of the VW Plan with the other short- and long-term disability programs. *Id.* at ¶ 8–9. And Starwood gave input on the website for the VW Plan and on UnumProvident's call system for benefits. *Id.* at ¶ 12.

Starwood, Unum and Provident also executed a Performance Agreement related to the insurance programs, including the VW Plan. (Rogers Decl. Ex. 5.) The agreement was essentially a quality-control mechanism, which required Unum and Provident to meet certain targets regarding their handling of VW Plan claims. At least 95 percent of the time, the claims had to be entered into the claims system within twenty-four hours of receipt, and they had to be paid, denied, marked pending within five days. *Id.* at Ex. 5, Attachment C, 39. Provident also had to submit semi-annual audits of its performance, and it had to pay a penalty if it failed to meet its targets.

Starwood's involvement in the creation and implementation of the VW Plan, as well as the execution of the Performance Agreement, are enough to put the VW Plan outside of the safe harbor. Starwood's "sole functions . . . with respect to the program" were not just to "permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer."

---

[2] Plaintiff objects to paragraph 6 of the Rogers Declaration. Although the Court here cites to paragraph 8, Plaintiff also makes general objections regarding the foundation for Rogers' knowledge of the VW Plan. Plaintiff claims that Rogers' declaration is only relevant if it addresses the VW Plan's administration in 2007, when Plaintiff bought his policy. But Rogers' testimony about the VW Plan's implementation is relevant to whether the safe harbor regulation applies. Moreover, Rogers has worked for UnumProvident since 1999 and was involved in the sale and implementation of insurance products for Starwood, including the VW Plan. This is a sufficient foundation to show personal knowledge of the facts the Court cites.

29 C.F.R. § 2510.3-1(j)(3). It also helped create the plan and monitor it through semi-annual audits. The VW Plan is not exempted from ERISA by the safe harbor regulation.

Plaintiff points to a letter sent by Sue Kuba, who appears to work for Starwood, during discovery. In it she wrote that "while Starwood offers to facilitate premium payments through payroll deductions for a voluntary short-term disability buy-up plan it's not a plan which is sponsored by Starwood. The agreement is between Unum and the individual." This statement is insufficient to create a genuine dispute of material fact. A person's belief about whether a plan is governed by ERISA is irrelevant. *See Meredith v. Time Ins. Co.*, 980 F.2d 352, 354 (5th Cir. 1993); *Peckham v. Gem State Mut. of Utah*, 964 F.2d 1043, 1049, n.11 (10th Cir. 1992). And even assuming what Ms. Kuba says is true, her statement does not contradict Rogers' declaration that UnumProvident was involved in the creation and implementation of the VW Plan, and that it monitored the plan through the Performance Agreement and semi-annual audits.

Because the VW Plan is an ERISA plan on its own, the Court does not consider Defendants' argument that it is a part of a multi-benefit ERISA plan.

**2.      ERISA Claim Preemption**

Under section 514(a) of ERISA, 29 U.S.C. § 1144(a), state-law claims that "relate to" an ERISA plan are preempted. Preemption under section 514(a) is an affirmative defense sometimes called "conflict preemption."

State-law claims are *completely preempted* by ERISA and are recharacterized as claims arising under federal law where the state law claim "relates to" an ERISA plan within the meaning of section 514(a) *and* falls within the scope of ERISA's civil enforcement provisions set forth in section 502(a) of ERISA, 29 U.S.C. §1132(a). *Metropolitan Life Ins. Co., v. Taylor*, 481 U.S. 58 (1987). State-law claims for breach of contract and breach of the implied covenant of good faith and fair dealing are preempted if they arise out of ERISA plans. *See, e.g., Tinger v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1131 (9th Cir. 1992).

Plaintiff's state-law claim for breach of the implied covenant of good faith and fair

dealing arises out of his claim for benefits under the VW Plan and is therefore preempted. *See id.* If he also alleges a breach of contract claim, that claim is also preempted. *See id.*

Defendants ask the Court to strike Plaintiff's demand for extra-contractual and punitive damages. Those types of damages are unavailable under ERISA, *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146–47 (1985), and the Court **STRIKES** them. They also ask the Court to strike Plaintiff's demand for a jury trial. There is no right to a jury trial on ERISA claims, *Thomas v. Or. Fruit Prods. Co.*, 228 F.3d 991, 995–997 (9th Cir. 2000), and the Court **STRIKES** Plaintiff's request for a jury trial.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for partial summary judgment [Doc. 32]. Plaintiff's state-law claims for breach of contract and breach of the implied covenant of good faith and fair dealing are dismissed. The Court **STRIKES** Plaintiff's request for extra-contractual and punitive damages, and his request for a jury trial.

**IT IS SO ORDERED.**

DATED: September 16, 2010

Honorable Barry Ted Moskowitz
United States District Judge